WELLFORD & WITHERS *v.* ARNOLD *et al.*

(Division B. March 14, 1932.)

[140 So. 220. No. 29866.]

788

Maynard, FitzGerald & Venable, of Clarksdale, for appellant.

**Dulaney & Bell,** of Tunica, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellants brought this action against appellees in the county court of Tunica county to recover four hundred four dollars and twenty-five cents, the purchase price of petroleum oils sold and delivered by appellants to appellees. The suit was on an itemized sworn account. Appellees admitted the purchase of the goods, the price charged by appellants, and their delivery, but denied liability upon the ground that they had been paid for. There was a trial in the county court resulting in a verdict and judgment in favor of the appellees; from that judgment appellants appealed to the circuit court where the judgment of the county court was affirmed; from the judgment of the circuit court the appellants prosecute this appeal.

Appellants, located in the city of Memphis, Tennessee, were engaged in the wholesale of gasoline and other petroleum products. Appellees were engaged, at Clay-

ton in Tunica county in this state, in the retail sale of such products. Appellants had a traveling salesman, whose name was Mason. Their contract of employment with Mason was that they would pay him a salary of three hundred dollars a month and expenses, and at the end of the year would charge him up with his salary and expenses and credit him with one-half of the net profits of the goods sold through him, and pay him whatever difference there was in his favor. The end of the year at which time settlement was to be made was the 31st of December. Mason was indebted to T. E. Salmon, one of the partners in appellees' firm, in the sum of something over two thousand dollars. Mason's duties were to visit the retail trade and take written orders for goods, subject to the approval of appellants. In other words, contracts for the sale and purchase of goods between Mason and the retail trade were subject to appellants' approval before they became binding on the latter. On August 27, 1926, Mason took a written order from appellees for fifteen drums of motor oil; the agreed price of the same being four hundred four dollars and twenty-five cents. The order was signed by S. A. Arnold for appellees and Mason for appellants. Just above their signatures the order contained these two sentences: "No verbal agreements accepted. This constitutes the entire contract." The order was accepted by appellants and the goods promptly shipped and invoiced to appellees.

Appellees testified, and so did Mason, that when the order was taken it was given by appellees upon the condition that Mason would himself pay for the goods for appellees and receive credit for the amount so paid on the indebtedness he was due Arnold, one of appellees' firm; and Mason testified further that before the goods were shipped out he notified the appellants of this agreement between him and the appellees and asked them to charge the amount to his account, but that appellants made no response to his statement and request. Appel-

lants testified that they never heard of any such arrangement between Mason and the appellees until months after the goods had been sold and delivered.

As stated, the goods were purchased on the 27th of August, 1926, and the evidence showed that appellants sent monthly statements of the account to appellees requesting payment, the last of which was sent on February 28, 1927. That statement was returned by appellees with this notation: ''This account has been paid long ago. Please take it up with your Mr. Mason. Yours truly, S. A. Arnold.'' (Arnold was a member of appellees' firm.) Appellees had purchased from appellants during the years 1926 and 1927 other oils and gasoline besides the oils involved in this suit. At two different times during the dealings between the parties, appellants had charged Mason's account with two small amounts and credited appellees with the same amounts for the purpose of enabling Mason to pay such amounts on his indebtedness to Salmon. One of these items was fifty dollars, and the other was twenty-eight dollars. When the fifty dollar item was charged to Mason and credited to appellees, appellants wrote appellees a letter in which they referred to the credit in this language: ''We beg to enclose herewith credit memorandum for fifty dollars paid in on your account by Mr. Mason as per special arrangements made with you.''

On October 14, 1926, about a month and a half after the goods involved here were purchased, Mason gave appellees a receipt in this language: ''Received of T. E. Salmon, four hundred four dollars and twenty-five cents, for account in full of S. A. Arnold & Company to Wellford & Withers for motor oil.'' (Signed, H. E. Mason.) There was no evidence showing or tending to show that when the goods were shipped and delivered to the appellees and invoiced to them by appellants that the appellees at that time, or at any other time, offered to return the goods because they had been charged by ap-

pellants to them instead of to Mason. And the evidence was without conflict that for some time appellants continued to send appellees monthly statements of the account demanding payment of the four hundred four dollars and twenty-five cents, to which the appellees made no response. Appellees admitted that they received these statements for some months before they made their claim to the appellants that the account should have been charged to Mason.

Appellants testified that they never heard of any such arrangement until they sent appellees the statement of the account dated February 28, 1927.

We have reached the conclusion that appellants' request for a directed verdict should have been granted. In considering the question we shall therefore treat as proven every material fact favorable to appellees' defense which the evidence either showed directly or by reasonable inference. Viewing the evidence in that light, this is the case: Appellees ordered the goods through appellants' traveling salesman Mason with the distinct understanding that the order was given on condition that Mason would pay appellants for the goods and receive credit for the amount on what he was due Salmon. The order for the goods was in writing, signed by appellees and by Mason. The order did not constitute a binding contract until accepted by appellants. Before the goods were shipped, Mason notified appellants of his agreement with appellees that he, Mason, would pay appellants for the goods, and requested appellants to charge the amount to him on his account with them. Appellants made no response to this notice and request by Mason, but shipped and invoiced the goods to appellees, and continued to send them monthly statements of the account demanding payment for several months before appellees notified appellants of the contract they had with Mason. The evidence showed that the appellants never charged Mason's account and credited appellees' account with

the price of the goods, and, as stated above, there was no evidence showing or tending to show that when appellees received the invoice of the goods, showing that they were charged to them, they offered to return the goods because they should have been charged to Mason.

An agent can only bind his principal when acting within the real or apparent scope of his authority, and persons dealing with an agent must know his powers and the scope and limit thereof. The terms of a written contract negotiated by an agent stipulating that the writing contains the entire contract between the parties cannot be changed or varied by showing that other representations or arrangements were made by parol by the agent at the time of the signing of the contract. Ismert-Hincke Milling Co. v. Natchez Baking Co., 124 Miss. 205, 86 So. 588; Bettman-Dunlap Co. v. Gertz Bros., 136 Miss. 160, 99 So. 384; J. B. Colt Co. v. McCullough, 141 Miss. 328, 105 So. 744.

When appellants received the written order for the goods from the appellees the situation was this: On the one hand Mason, appellants' salesman, was saying to them that the goods had been bought by the appellees on condition that he (Mason) would pay appellants for them and receive credit for the amount so paid on what he was due a member of the appellees' firm. On the other hand, appellees were, in effect, saying to appellants in express and unmistakable language in the written order that Mason's statement was not true, that the written order embodied the entire terms of the contract. In other words, that the appellants should pay no attention to what Mason might say as to the terms of the contract outside of what was written in it. Under those circumstances appellants made no response to Mason's statement as to the terms of the contract, and his request that the goods be charged to his account.

Conceding for argument's sake that appellants could have bound themselves by parol to charge the goods to

Mason instead of to appellees, was mere silence on their part, under the facts and circumstances, tantamount to such an agreement? Did mere silence give consent? We think not, for appellants immediately shipped the goods to appellees, sending them an invoice showing that they were charged to appellees, and for several months thereafter sent appellees monthly statements of the account demanding payment for the goods. It seems there could not have been a more emphatic and unmistakable repudiation by appellants of Mason's agreement than those facts. If the appellees were relying on the agreement with Mason, when they received the first invoice of the goods showing they were charged to them instead of to Mason they were due at once to notify appellants of the contract they had with Mason and offer to return the goods if appellants were not willing to carry out the contract. This appellees failed to do. Before signing the written order the appellees should have erased the provision that no verbal agreements would be recognized, and should have inserted therein the arrangement with Mason that the goods should be charged to him and not to appellees. Having failed to do so, appellants were entitled to accept the order as written. We are of opinion that appellees, by the written order and the subsequent dealings of the parties, were estopped from setting up the parol agreement with Mason as a defense to the action.

The fact that on two other occasions appellants had charged Mason's account with small amounts and credited them to appellees' account, we think neither established nor tended to establish such a course of dealing between the parties as authorized appellees to assume that Mason had the authority from appellants to make the agreement here involved; and this is true especially in view of the fact that appellees had right before their eyes the signed written order which expressly excluded any parol agreement whatever.

The written order was admitted in evidence over appellees' objection. Appellees argue that the court erred in so ruling, because the written order was not the basis of appellants' action, the suit having been brought on open account for goods sold and delivered. Section 526 of the Code of 1930 provides, among other things, that there shall be annexed to or filed with the declaration in every case founded on any writing a copy of such writing with the names of subscribing witnesses, if any, and if that shall not be done evidence thereof shall not be given on the trial. Appellees invoke the principle that a plaintiff cannot bring an action in assumpsit and recover on special contract. The trouble with appellees' position is that the recovery sought in this case is not on the written contract. The provision of the written contract in question in this cause is merely incidental to the main contract to pay for goods sold and delivered. The appellants had fully performed the contract on their part; the goods had been sold and delivered to appellees. The appellees admitted the purchase of the goods and the price to be paid for them, and defended alone upon the ground that the goods had been paid for under the arrangement with Mason. In reply to that defense appellants, for the first time, are driven to invoke the provision in question of the written order. There is no inconsistency between the written order and the contract for goods sold and delivered. Where a special contract has been fully performed according to its terms by the plaintiff, and nothing more remains to be done by the defendant, under the allegations of plaintiff's declaration, than to pay the money earned by the plaintiff, a recovery may be had either upon special assumpsit on the contract or upon common counts. Richardson v. Oneal, Walk. 469; Coor v. Grace, 10 Smedes & M. 434; New Orleans, J. & G. N. R. Co. v. Pressley, 45 Miss. 66; Daniel v. Daniel (Miss.), 4 So. 95; Refuge Cotton Oil Co. v. Twin City Fire Ins. Co., 152 Miss. 522, 120 So. 214.

It was held in the latter case that where a declaration states a cause of action independent of writings referred to, but not attached to the declaration, a demurrer will not lie to the declaration.

We are of opinion that the court did not err in admitting the order in evidence.

Reversed, and judgment here for appellants.